**In the Matter of INTERNATIONAL FOOD CORP. OF AMERICA, Debtor.**

**Maxwell W. WELLS, Jr. as Trustee, Plaintiff,**

**v.**

**INTERNATIONAL FOOD CORP. OF AMERICA, Defendant.**

**and**

**James E. THOMAS, CPA as Trustee for Class 10 Unsecured Creditors of Florida Peach Corp., Plaintiff,**

**v.**

**INTERNATIONAL FOOD CORP. OF AMERICA, Defendant.**

**Adv. Nos. 83–0262, 83–0265.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 25, 1983.

Douglas P. McClurg, Jacksonville, Fla., Don M. Stichter, Tampa, Fla., for defendant.

Chester J. Trow, Ocala, Fla., for plaintiff.

Maxwell W. Wells, Jr., Orlando, Fla., Trustee.

## MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

INTERNATIONAL FOOD Corp. of America (International Food) is a Debtor currently involved in a Chapter 11 Reorganization Case. The matters under consideration are two adversary proceedings, the first styled "Maxwell W. Wells, Jr. as Trustee vs International Food Corp. of America," Adv. No. 83—262. The second is an adversary proceeding styled ·"James E. Thomas, CPA as Trustee, for Class 10 Unsecured Creditors of Florida Peach Corp. vs International Food Corp. of America," Adv.

No. 83–0265. To further complicate the matter, Allius Moran Arosemena filed a Motion for Leave to Intervene and a Motion to Consolidate. Both Motions were filed in both adversary proceedings by Arosemena who is the Curador for the estate of Florida Peach Corp. of America, International Division, a Panamanian corporation which is currently involved in an involuntary bankruptcy proceeding in the Fourth Circuit Court in the Republic of Panama. A Curador is the Panamanian equivalent to a Chapter 7 Trustee appointed under the Bankruptcy Code. Arosemena also intervened in another adversary proceeding in which International Food filed a complaint seeking leave to sell certain of its land holdings free and clear of all claims and liens. Arosemena was permitted to intervene in that adversary proceeding basically because Arosemena contends that the transfer from Florida Peach to International Food was a voidable, fraudulent transfer. In addition, there appears to be an ancillary proceeding pending in the Jacksonville Division of the Middle District of Florida which is an ancillary proceeding to a foreign proceeding instituted by Arosemena pursuant to § 304 of the Bankruptcy Code.

At the preliminary hearing scheduled to consider the complaint filed by Thomas and Wells, the Court also heard the Motion to Consolidate and the Motion to Intervene filed by Arosemena. The Court announced at the conclusion of the hearing that inasmuch as both of these adversary proceedings are merely complaints to modify the stay in order to permit the Plaintiffs to enforce their mortgage liens against properties owned by the Debtor, it would be inappropriate to permit Arosemena to intervene in these proceedings inasmuch as these proceedings do not involve any adjudication of the merits of the controversy between the parties. The narrow question presented is whether or not the stay should be lifted either for lack of adequate protection pursuant to § 362(d)(1), or in the alternative, on the ground that the Debtor has no equity in the subject properties and that these properties are not needed for effective reorganization and the stay should be lifted pursuant to § 362(d)(2).

Ordinarily, a proceeding pursuant to § 362(e) would not involve any complicated questions since the issues as set forth by the Code are narrow. However, this is a very unusual case and in order to put these two adversary proceedings in the proper posture, it is necessary to recite briefly the historical background of the controversy and the origin of these two mortgages which Wells and Thomas seek to enforce. Robert Lurie, who is the president of International Food, was apparently involved as a principal in a corporation known as Florida Peach Corp. of America, International Division, a Panamanian corporation (Florida Peach). Robert Lurie, in his capacity either as Trustee for the planting program or in his capacity as a principal officer or executive of Florida Peach executed three notes and three mortgages, the first on March 27, 1981, the second on April 30, 1981, and the last on May 21, 1981 in favor of Maxwell W. Wells, Jr. It appears that this mortgage was executed to secure advances made by Wells in the then pending Chapter 11 case involving Florida Peach in order to assist the Debtor, Florida Peach, to complete its peach planting and harvesting program. The total amount advanced by Wells in three different installments was $150,000. This amount is secured by the mortgages executed by Lurie either in this capacity as Trustee or as principal for Florida Peach. The mortgage executed in favor of Wells encumbers 110 acres of property known as the Pedro tract. It further appears that nothing was repaid on the Wells mortgage, and Wells now seeks, through this adversary proceeding, No. 83–0262, to obtain relief from the automatic stay on the ground of lack of equity and lack of adequate protection; or in the alternative, lack of equity and that the property is not needed for effective reorganization. It further appears that the Chapter 11 case of Florida Peach was ultimately dismissed, and the plan of reorganization was never confirmed. The property subject to the Wells mortgage was later transferred by Lurie, on behalf of Florida Peach, to International Food, the

Debtor currently involved in a Chapter 11 case in this Court.

The record further reveals that during the pendency of the Florida Peach Chapter 11 case in the Jacksonville Division as part of the reorganization plan, Florida Peach executed a note and mortgage in favor of James E. Thomas, CPA in his capacity as trustee for the Class 10 Unsecured Creditors of Florida Peach. It is without dispute that Florida Peach received no consideration for the note and mortgage, and the note was executed to secure pre-petition obligations of Florida Peach as part of the overall reorganization plan. However, neither the Plan nor the execution of the note and mortgage was ever approved and the reorganization case involving Florida Peach was ultimately dismissed.

The property mortgaged to Thomas is also located in the Pedro tract. Thomas has a first mortgage on 20 acres in Section 36 and a second mortgage on 20 acres in Section 38. The total properties encumbered in favor of Thomas as Trustee comprise 40 acres of agriculture land. The properties encumbered in favor of Wells consist of 110 acres located in the Pedro tract and 40 additional in the Lowell tract for a total of 150 acres. It further appears from the record that the total encumbrance in favor of Wells is $219,770 including principal and interest and that mortgage earns per diem interest at the rate of $91.81. The balance due on the Thomas mortgage is $405,585.50 principal plus $62,989.84 earned interest. The combined obligations earn an interest of $88.90 per day. It is without dispute that International Food has not made any payments on either of these two mortgages.

The expert testimony indicates that the property encumbered in favor of Wells which has a value of $259,080 against an outstanding indebtedness of $219,770 has an approximate net equity in favor of the Debtor in the approximate amount of $30,000.

Expert testimony at the final evidentiary hearing indicates that the 110 acres land in the Pedro tract has a value of $2,250 per acre if it is exposed on the open market for a sufficient length of time, i.e. a minimum of six months to possibly one year. On a quick sale, however, according to the expert, the per acre value of the property is only $2,045 which would produce net proceeds to the seller of $1,738 per acre. This would include, of course, a deduction from the purchase price of real estate commission, cost of sale and incidental items such as closing costs and the like. Accepting the later figure, that would indicate that the 110 acres of Pedro tract is worth $191,180.

The 40 acres located in the lower tract which is also encumbered by the Wells mortgage has a value of $2,400 per acre if it is exposed for sale on the open market for a sufficient length of time. However, on a quick sale basis, according to the expert, it has a value of $2,000 per acre. Again, deducting the closing costs and incidental items, it would produce net proceeds to the seller of $68,000. Thus, the combined two figures: $191,180 and $68,000 on a quick sale would indicate a combined value of $259,180 for the properties located in the Pedro tract and in the lower tract encumbered by the Wells mortgage. Taking these figures against the indebtedness due on the Wells mortgage, it is clear that even if one accepts the quick sale valuation rather than a sale in the ordinary course of business, the Debtor has substantial equity in the properties, therefore, it would not be appropriate at this time to lift the automatic stay to permit Wells to proceed to foreclose the mortgage.

This is, however, not the case concerning the Thomas mortgage encumbering 40 acres of land located in the Pedro tract. Thomas has no interest in the lower tract and it occupies only the first position on the 20 acres securing a debt of $468,575.34. Thus, it is evident that the Debtor has no equity whatsoever in the properties encumbered by the Thomas mortgage. Therefore, Thomas shall be entitled to the relief it seeks. In this connection it should be emphasized, however, that this is merely a determination of the properly raised issues in the complaint to lift the stay and this decision to lift the stay shall not be con-

strued to intimate that the Thomas mortgage is a valid encumbrance on this property. On the contrary, the validity of this mortgage is questionable inasmuch as it is clear from the record that there was no present consideration for the execution of this mortgage and that the mortgage and note were executed only as part of the overall plan of reorganization, a reorganization which never achieved confirmation. This question, however, shall be resolved in the context of a mortgage foreclosure action in the State Court and not by this Court.

The matters under consideration are not "related" matters as defined by the Emergency Local Rule (d)(3)(A) and, therefore, by virtue of subclause (2) of the Emergency Local Rule, a separate final judgment entered in these two adversary proceedings shall be effective upon entry by the Clerk of the Bankruptcy Court unless stayed by the Bankruptcy Judge or by a District Judge. Accordingly, two separate final judgments shall be entered in the respective adversary proceedings.